444 S.E.2d 285

Johnny C. ABBOTT, et al., Plaintiffs
Below, Appellants,

v.

OWENS–CORNING FIBERGLAS COR-
PORATION, et al., Defendants Be-
low, Appellees.

No. 21757.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 12, 1994.

Decided April 22, 1994.

Fred Adkins, Mark H. Hayes, M. Margaret Evans, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for appellees Harbison–Walker Refractories and Dresser Industries, Inc.

George J. Anetakis, Mark A. Colantonio, Frankovitch & Anetakis, Weirton, for appellee Magneco Metrel, Inc.

Roger E. Podesta, William S. Adams, Debevoise & Plimpton, New York City, Patrick Riley, Riley & Defalice, Pittsburgh, PA, for appellee Owens–Corning Fiberglas Corp.

Robert P. Martin, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellee Quin–T Corp.

Eric K. Falk, Pietragallo, Bosick & Gordon, Pittsburgh, PA, for appellee Ohio Valley Insulating Co., Inc.

Julia Bennett Jagger, Michael E. Hutchins, Atlanta, GA, for appellee Georgia–Pacific Corp.

Joseph S. Beeson, James S. Chase, Robinson & McElwee, Charleston, for appellees Kaiser Aluminum & Chemical Corp., North American Refractories Co., National Refractories and Minerals Corp., IMCERA Group, Inc. and Corhart Refractories Corp.

Dawn K. Siladie, William & Arnold, Pittsburgh, PA, Lester C. Hess, Jr., Bachmann, Hess, Bachmann & Garden, Wheeling, for appellee Rutland Fire Clay Co.

Claudia Wickham Lane, Allen T. Lane, Lane & Lane, Pittsburgh, PA, for appellee Resco Products, Inc.

McHUGH, Justice:

This case is before this Court upon the appeal of over one thousand plaintiffs, who filed product liability actions against approximately seventy manufacturers, suppliers, and distributors of asbestos-containing products for injuries sustained from exposure to those products. The plaintiffs appeal the December 1, 1992, orders of the Circuit Court of Cabell County. For reasons set forth below, we reverse the circuit court's orders and remand the case to the circuit court.

Robert C. Chambers, Huntington, James F. Humphreys and John E. Sutter, Charleston, for appellants.

## I

One of the December 1, 1992, orders finalizes and incorporates a September 9, 1992, order that dismissed the claims of 1,015 plaintiffs on grounds of *forum non conveniens*. The circuit court found that the actions of the plaintiffs have no nexus with the State of West Virginia since the plaintiffs reside outside the State and since the plaintiffs do not claim exposure to asbestos in West Virginia. Furthermore, the circuit court stated that the fact that doctors in West Virginia have diagnosed the plaintiffs is insufficient to create a nexus between the actions filed by the plaintiffs and the State of West Virginia. Additionally, the circuit court found that it would be extremely confusing to apply the laws of the various jurisdictions in the same action, and that the action would place a burden on the West Virginia courts causing undue congestion. The plaintiffs note that three of the defendants are West Virginia corporations, and all but five of the remaining defendants are registered to do business in West Virginia. The defendants agreed not to assert a statute of limitations defense in a subsequent action if the plaintiffs' claims were dismissed on grounds of *forum non conveniens*.

The second December 1, 1992, order dismissed the claims of West Virginia residents and nonresidents against five nonresident corporate defendants for lack of personal jurisdiction under the long-arm statute set forth in *W.Va.Code*, 31-1-15 [1984]. Those five defendants are North American Refractories Company, Magneco Metrel, Inc., Rock Wool Manufacturing Company, Zedmark, Inc. and Surface Combustion, Inc.

The circuit court found that those five defendants were not registered with the Secretary of State's office in order to do business in West Virginia and that the plaintiffs do not allege exposure to asbestos in West Virginia. The circuit court also found that pursuant to *W.Va.Code*, 31-1-15 [1984] the defendants

(1) did not make a contract to be performed in whole or in part in West Virginia, (2) did not commit a tort in whole or in part in West Virginia, and (3) did not manufacture, sell, offer to sell or supply a defective product in West Virginia that caused harm to the plaintiffs[.]

Additionally, the circuit court found that "the 'minimum contacts' analysis relied upon by the plaintiffs for the purpose of determining jurisdiction in this action must be considered in addition to, and not in lieu of, the requirements of West Virginia Code § 31-1-15[.]" Therefore, the circuit court concluded that it was not necessary to determine whether the defendants had sufficient minimum contacts with the State of West Virginia to satisfy federal due process concerns since the plaintiffs could not satisfy the requirements of *W.Va.Code*, 31-1-15 [1984].

## II

■ The first issue is whether the circuit court erred by not finding that the common law doctrine of *forum non conveniens* is presumed to be unavailable when three of the defendants are West Virginia corporations and all but five of the defendants are authorized to do business in West Virginia. For reasons explained below, we decline to hold that the doctrine of *forum non conveniens* is presumed to be unavailable when a defendant is a resident of West Virginia or is authorized to do business in West Virginia.

■ Recently, this Court recognized that the common law doctrine of *forum non conveniens* is available to the courts of West Virginia. Syl. pt. 3, *Norfolk and Western Ry. Co. v. Tsapis*, 184 W.Va. 231, 400 S.E.2d 239 (1990). When adopting the doctrine this Court explained that "[t]he common law doctrine of *forum non conveniens* is simply that a court may, in its sound discretion, decline to exercise jurisdiction to promote the convenience of witnesses and the ends of justice, even when jurisdiction and venue are authorized by the letter of a statute." *Id.* at syl. pt. 1. This Court went on to state that:

The common law doctrine of *forum non conveniens* is available to courts of record in this State. The doctrine accords a preference to the plaintiff's choice of forum, but the defendant may overcome this preference by demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another avail-

able forum exists which would enable the case to be tried substantially more inexpensively and expeditiously. To the extent that *Gardner v. Norfolk & Western Railway Co.*, [179] W.Va. [724], 372 S.E.2d 786 (1988), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193, (1989), declined to apply this doctrine, it is overruled.

*Id.* at syl. pt. 3.

This Court recognized that preference is given to the plaintiff's choice of forum. Furthermore, the plaintiffs, in the case before us, point out that this Court noted when discussing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), that the Supreme Court of the United States "acknowledged that customarily the plaintiff's choice of a forum was entitled to great deference, but this preference may be diminished when the plaintiff is a nonresident and the cause of action did not arise in the forum state." *Tsapis,* 184 W.Va. at 235, 400 S.E.2d at 243.

The plaintiffs argue that if deference is given to a plaintiff's choice of forum and if less deference is given to a foreign plaintiff's choice of forum, then logically the forum should be presumed convenient when the defendant is a resident of the forum state. In support of their argument, the plaintiffs quote a portion of *Restatement of Conflicts (Second)* § 84 cmt. f (1971) which outlines when the plaintiff's choice of forum is presumed to be convenient:

> f. *Which forums will probably be appropriate....* One of these is the state where the occurrence took place.... *A second forum is the state of the defendant's domicile or, in the case of a corporation, the state of its incorporation or principal place of business. These states will presumably be convenient places for the defendant to stand suit, and the defendant's relationship to them makes it appropriate for their courts to hear the case.* A third forum is the state of the plaintiff's domicile.

(emphasis added). Additionally, the plaintiffs point to *Murdoch v. A.P. Green Industries, Inc.,* 603 So.2d 655 (Fla.Dist.Ct.App. 1992) which states that "[i]t is established

Florida law that 'a case may be dismissed from the Florida courts in favor of a more convenient forum in another state only where *none* of the parties involved in the suit are residents of this state.'" (citations omitted).

However, as noted by the defendants, many courts addressing this issue have declined to hold that the doctrine of *forum non conveniens* is unavailable as a matter of law when the defendant is a resident of the forum state. *See Stangvik v. Shiley, Inc.,* 54 Cal.3d 744, 1 Cal.Rptr.2d 556, 819 P.2d 14 (1991); *Winsor v. United Air Lines, Inc.,* 52 Del. 161, 154 A.2d 561 (Del.Super.Ct.1958); *Russell v. Chrysler Corp.,* 443 Mich. 617, 505 N.W.2d 263 (1993); and *Silver v. Great American Insurance Co.,* 29 N.Y.2d 356, 328 N.Y.S.2d 398, 278 N.E.2d 619 (1972). A common rationale given by these courts is that "[a] court should not decide that there are circumstances in which the doctrine will always apply or never apply." *Stangvik, supra,* 1 Cal.Rptr.2d at 560–61, 819 P.2d at 18–19. If there were rigid rules about when the doctrine applied, it "would lose much of the very flexibility that makes it so valuable." *Piper Aircraft Co.,* 454 U.S. at 250, 102 S.Ct. at 263, 70 L.Ed.2d at 432 (1981).

For instance, in *Russell, supra,* two cases were before the Supreme Court of Michigan. In both cases the plaintiffs, who were residents of Florida, were injured by cars in Florida, but sued Chrysler Corporation, a Michigan corporation, in the State of Michigan. In both cases, the lower courts declined to apply the doctrine of *forum non conveniens.* One of the lower courts stated that it refused to apply the doctrine of *forum non conveniens* because the defendant, Chrysler Corporation, is a resident of Michigan.

The Supreme Court of Michigan reversed the lower courts' rulings and held that there is no case law in Michigan which suggests that the doctrine is inapplicable when one of the parties is a resident of the forum state. *Id.* The Supreme Court of Michigan went on to list several factors which should be weighed when determining whether the doctrine of *forum non conveniens* applies. The focus of the case was on weighing the various factors rather than on having absolute stan-

dards which determine when the doctrine applies.

While this Court has not explicitly adopted a list of factors to be considered, we did note that the Supreme Court of the United States in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) outlined two interests which should be weighed—the private interest in the efficient administration of the court system and the public interest of the litigants:

> 'Included among the private interests of the litigants are: the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; the possibility of a view of property, if such a view would be appropriate in the action; the enforcibility [sic] of any judgment; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.

> 'The public interests include the relative congestion of the respective courts' dockets; the burden of imposing jury duty upon the citizens of a community which has no or very little relation to the litigation; the local interest in having localized controversies decided at home; and the advantages of conducting a trial in a forum familiar with the applicable law and of avoiding conflicts of law. *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843, 91 L.Ed. at 1062–63.'

*Tsapis,* 184 W.Va. at 234–35, 400 S.E.2d at 242–43 (citation omitted).

More importantly, this Court noted in *Tsapis,* 184 W.Va. at 235, 400 S.E.2d at 243 that "[a] number of courts have recognized general factors, similar to those set out in *Gilbert,* to be considered in applying their *forum non conveniens* doctrine. These courts accept that these considerations are not exhaustive and that the doctrine must be applied flexibly and on a case-by-case basis." *Tsapis* set out a workable framework for courts to determine whether or not the doctrine of *forum non conveniens* should be applied.

■ Accordingly, we hold that the framework to analyze whether the common law doctrine of *forum non conveniens* is applicable has been set forth in *Norfolk and Western Ry. Co. v. Tsapis,* 184 W.Va. 231, 400 S.E.2d 239 (1990). This framework ensures that the doctrine of *forum non conveniens* is applied flexibly and on a case-by-case basis. A presumption that the forum is convenient when a defendant is a resident of that forum would undercut the flexibility of the doctrine.

### III

■ The second issue is whether the trial court abused its discretion by failing to give any deference to the plaintiffs' choice of forum, and in dismissing the plaintiffs' actions based upon the doctrine of *forum non conveniens* when the defendants failed to demonstrate that these cases could be tried substantially more expeditiously and inexpensively in another forum. For reasons set forth below, we find that the trial court did abuse its discretion.

■ At the outset, we point out that although *Tsapis, supra,* provides a workable framework for courts to determine whether the doctrine of *forum non conveniens* should be applied, the court's analysis must be supported by a record. The trial court may not rely on the mere allegations of the party who is seeking to have a case dismissed on grounds of *forum non conveniens* that there is no nexus between the forum and the plaintiff and that another forum exists in which the case can be tried substantially more expeditiously and inexpensively.

For instance, in *Picketts v. International Playtex, Inc.,* 215 Conn. 490, 576 A.2d 518 (1990), the plaintiffs, who are Canadian citizens, brought a product liability action against a Canadian tampon manufacturer and its American parent corporation, which was located in Connecticut. The action was brought in Connecticut for damages sustained when a woman (who was the wife and mother of the plaintiffs) died in Canada allegedly of toxic shock syndrome. The trial court dismissed the case on grounds of *forum non conveniens.* The trial court found that the defendants would be at a disadvantage in obtaining testimony on the decedent's medi-

cal condition if the case were tried in Connecticut. Additionally, the trial court found that choice of law principles favored the alternative forum since Canadian law should apply to the case.

The Supreme Court of Connecticut reversed the trial court. It noted that the dismissal was primarily based on access to witnesses. The defendants had merely alleged that the Connecticut forum was inconvenient and had not provided a list of witnesses who would be unavailable. The Supreme Court of Connecticut found that the trial court abused its discretion when dismissing the case because "[t]he *mere assertion* that such evidence is irretrievably located in Canada is, ..., not adequate to tip the scales in the defendants' favor on a motion to dismiss for forum non conveniens." *Id.* 576 A.2d at 528 (citation omitted and emphasis added). *See also Schoon v. Hill*, 207 Ill. App.3d 601, 152 Ill.Dec. 841, 566 N.E.2d 718 (Ct.1990), *cert. denied*, 139 Ill.2d 604, 159 Ill.Dec. 116, 575 N.E.2d 923 (1991) (the trial court did not abuse its discretion when declining to dismiss a case on grounds of *forum non conveniens* since the motion for dismissal failed to set out any facts to show that other forums would be more convenient).

The Supreme Court of Connecticut points out that "[e]mphasis on the trial court's discretion does not, ..., overshadow the central principle of the forum non conveniens doctrine that *'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'* (Emphasis added.) *Gulf Oil Corporation v. Gilbert, supra* [.]" *Picketts*, 576 A.2d at 524. The Supreme Court of Connecticut went on to state that dismissing a case on the basis of *forum non conveniens* is a drastic remedy which must be used with caution and restraint. *Id.* However, in *Picketts* the Supreme Court of Connecticut did find that the trial court abused its discretion when it dismissed the case on grounds of *forum non conveniens* since the record was not adequately developed to support the dismissal.

■ Likewise, we have held in syllabus point 5, in part, of *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991) that this Court will not review a circuit court's order disqualifying a lawyer unless the circuit court's order is based upon an adequately developed record. In the alternative, if the circuit court's order disqualifying a lawyer is based upon an inadequately developed record, this Court, under appropriate circumstances, may remand a case to the circuit court for development of an adequate record.

While not directly on point, *Garlow* does make it clear that this Court must have a record in order to review the basis of a trial court's decision. Accordingly, we hold that in order for this Court to review a trial court's decision regarding the application of the doctrine *forum non conveniens*, it is necessary for the trial court to provide a record in sufficient detail which will show the basis of its decision.

■ With this in mind, we will apply the framework set forth in *Tsapis, supra*, to the case before us. As we stated in the previous section, the common law doctrine of *forum non conveniens* accords a preference to the plaintiff's choice of forum. *Id.* at syl. pt. 3. However, the defendant can overcome this preference by showing that the forum has only a slight nexus to the suit and that another forum exists in which the suit can be tried *substantially* more inexpensively and expeditiously. *Id.* The question before us now is whether the defendants in the case before us overcome the preference accorded to the plaintiffs' choice of forum.

■ The defendants point out that they can show that the forum has only a slight nexus to the suit since the plaintiffs, who were dismissed under the doctrine of *forum non conveniens*, were not residents of West Virginia nor were they exposed to asbestos in West Virginia. We agree that this is evidence that the forum may only have a slight nexus with the suit. However, the fact that the defendants are residents of the forum adds balance to the scales. Furthermore, the analysis does not stop at this point. The defendants must also show that another forum exists in which the suits can be tried substantially more inexpensively and expeditiously. This offer of proof with a detailed showing of how long it will take to get a jury

trial in another forum, the additional costs to the parties (including legal expenses in the other forum), and other factual aspects that would show the advantages of the alternative forum are requisites for a motion for dismissal under the doctrine of *forum non conveniens*. We have examined the record which is before us, and we find little proof to support the trial court's conclusion that another forum exists in which the cases can be tried substantially more inexpensively and expeditiously.

■ For instance, the trial court stated in its order that the cases would place an undue burden on the courts and citizens of this State. However, the question under the framework established in *Tsapis*, is not whether it is inconvenient for our courts, but whether another forum exists in which the cases can be tried *substantially* more inexpensively and expeditiously.

The defendants did submit to the circuit court a report entitled "West Virginia Court System Annual Caseload Report for Calendar Year 1991." However, no affidavits or reports were submitted which indicated that the caseloads of the Kentucky or Ohio courts were less congested. The defendants did submit a court order from a different case in which the Circuit Court of Cabell County dismissed claims on grounds of *forum non conveniens*. In that case the circuit court took judicial notice of the fact that the caseload in Boyd, Kentucky was substantially less congested than the caseload in Cabell County. However, without more evidence, that case has no bearing on this case since the facts are different and since the doctrine of *forum non conveniens* is to be applied on a case-by-case basis.

Additionally, the trial court stated in its order that the cases should be dismissed since it would be confusing to apply the laws of various jurisdictions. However, "the mere fact that the court is called upon to determine and apply foreign law does not present a legal problem of the sort which would justify the dismissal of a case otherwise prop-

erly before the court." *Hoffman v. Goberman,* 420 F.2d 423, 427 (3d Cir.1970) (footnote omitted).

■ The trial court did not mention whether there were witnesses who would be unavailable to testify if the cases were to remain in West Virginia.[1] In fact, the trial court did not provide any other reasons to support its decision. There is no evidence in the record before us which indicates that the cases can be tried substantially more inexpensively and expeditiously in another forum. As we stated previously in this opinion, the doctrine of *forum non conveniens* is a drastic remedy which should be used with caution and restraint. Although we have not dictated a specific list of factors which a trial court must consider, a trial court should make findings of fact to support its decision to dismiss a case on grounds of *forum non conveniens*. Mere allegations that a case can be tried more conveniently in another forum are not sufficient to dismiss a case on grounds of *forum non conveniens*.

The circuit court, in the case before us, abused its discretion when it dismissed the cases on grounds of *forum non conveniens* since the circuit court based its decision on mere conclusions by the defendants. Accordingly, we reverse the circuit court's order and remand the case to the circuit court to develop a more detailed record.

### IV

■ The last issue is whether the trial court erred by dismissing the claims of West Virginia residents and nonresidents against five defendants for lack of personal jurisdiction under *W.Va.Code,* 31-1-15 [1984] without determining whether the defendants had sufficient minimum contacts with the State of West Virginia to satisfy federal due process concerns. As we noted earlier in this opinion, the circuit court concluded that it was not necessary to determine whether the defendants had sufficient minimum contacts with the State of West Virginia to satisfy

---

1. Defendant, Fibreboard, stated in its "Motion to Dismiss the Claims of Certain Plaintiffs based on *Forum Non Conveniens*" memorandum of law which was submitted to the circuit court that "[a]t this point in the litigation, neither plaintiffs nor defendants can identify with precision the residences of all their witnesses."

federal due process concerns since the plaintiffs could not satisfy the requirements of *W.Va.Code*, 31–1–15 [1984].

The defendants point out that the Supreme Court of the United States acknowledged the use of a two-step approach when analyzing jurisdictional questions. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559, 563, 62 L.Ed.2d 490, 496–97 (1980). The first step involves determining whether the defendant's actions satisfy a state's long-arm statute. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

The plaintiffs contend that in recent years the two-step analysis has been merged into one so that jurisdiction may be asserted over individuals if the assertion of jurisdiction comports with federal due process concerns. The plaintiffs point to syllabus point 2 of *Hill by Hill v. Showa Denko, K.K.*, 188 W.Va. 654, 425 S.E.2d 609 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993), in support of their argument:

> Personal jurisdiction 'premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause' and can be exercised without the need to show additional conduct by the defendant aimed at the forum state. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 117, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987).

**2.** In syllabus point 2 of *State ex rel. CSR Limited v. MacQueen*, 190 W.Va. 695, 441 S.E.2d 658 (1994), we held:

> In determining whether our courts have jurisdiction under the stream of commerce theory articulated in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 [107 S.Ct. 1026, 94 L.Ed.2d 92] (1987), the rule in West Virginia will always be congruent with the outer edge of the due process envelope that, as determined by the Supreme Court of the United States, circumscribes jurisdiction. However, in that case CSR Limited conceded that the long-arm statutes conferred jurisdiction by not raising the issue. Therefore, this Court did not analyze whether the evidence supported personal jurisdiction under our long-arm statutes. Instead, we analyzed whether the extension of jurisdiction in that particular case comported with federal due process. Like syllabus point 2 of *Showa Denko*, syllabus point 2 of *CSR Limited* provides parameters for determining

However, a careful reading of *Showa Denko* reveals that this Court did apply the two-step analysis which was acknowledged in *World–Wide Volkswagen Corp., supra.* This Court discussed West Virginia's personal jurisdiction statutes set forth in *W.Va.Code*, 31–1–15 [1984] and *W.Va.Code*, 56–3–33 [1984], and concluded that the facts in *Showa Denko* conferred jurisdiction under our personal jurisdiction statutes. This Court also concluded in *Showa Denko* that this extension of personal jurisdiction did not violate federal due process. Syllabus point 2 of *Showa Denko* merely provides parameters for determining whether the application of jurisdiction under our long-arm statutes comports with federal due process. Furthermore, if we declined to follow the two-step approach our long-arm statutes would become meaningless. Common sense dictates that we find that a two-step process must be used when analyzing whether personal jurisdiction exists.[2]

Accordingly, we hold that a court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in *W.Va.Code*, 31–1–15 [1984] and *W.Va.Code*, 56–3–33 [1984]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process. Therefore, we will analyze the case before us using the two-step analysis.[3]

when the extension of jurisdiction under our long-arm statues comports with federal due process.

**3.** We have previously recognized that a two-step analysis must be made when determining whether personal jurisdiction should be extended. For instance, we noted in *Kidwell v. Westinghouse Electric Co.*, 178 W.Va. 161, 162, 358 S.E.2d 420, 421 (1986) that "our 'long-arm' statute, must be read in conjunction with the constitutional due process concept that a foreign corporation must have certain 'minimum contacts' before it is amenable to personal jurisdiction in our courts." Additionally, the United States District Court for the Northern District of West Virginia noted that "[i]n analyzing whether the Court has personal jurisdiction . . . the first determination is whether West Virginia state law authorizes jurisdiction. The second consideration is if West Virginia law authorizes jurisdiction, whether it comports with constitutional due process requirements." *Hinz-*

In the case before us, it is apparent that the circuit court failed to complete the first step of analysis. In West Virginia we have two statutes which outline when *in personam* jurisdiction can be obtained. The circuit court, in the case before us, only addressed one of these statutes.

The primary long-arm statute is *W.Va. Code*, 56–3–33(a) [1984] which confers *in personam* jurisdiction on a nonresident[4] if the nonresident engages in one of the acts specified below:

(1) Transacting any business in this State;

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State;

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume or be affected by the goods in this State: Provided, That he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(6) Having an interest in, using or possessing real property in this State; or

(7) Contracting to insure any person, property or risk located within this State at the time of contracting.

The second statute is *W.Va.Code*, 31–1–15 [1984], in relevant part, which defines when a corporation is doing business in this State so that *in personam* jurisdiction may be obtained over the corporation:

For the purpose of this section, a foreign corporation not authorized to conduct affairs or do or transact business in this State pursuant to the provisions of this article shall nevertheless be deemed to be conducting affairs or doing or transacting business herein (a) if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, (b) if such corporation commits a tort in whole or in part in this State, or (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this State notwithstanding the fact that such corporation had no agents, servants or employees or contacts within this State at the time of said injury.

Obviously, *W.Va.Code*, 31–1–15 [1984] is a narrow statute pertaining only to corporations since chapter 31 of the *West Virginia Code* is known as the West Virginia Corporation Act. *See W.Va.Code*, 31–1–1 [1974]. *W.Va.Code*, 31–1–15 [1984] is merely an elaboration on the transacting business provision of *W.Va.Code*, 56–3–33(a) [1984]. More importantly, *W.Va.Code*, 31–1–15 [1984] is not the exclusive test for when *in personam* jurisdiction may be obtained over a corporation. *W.Va.Code*, 56–3–33 [1984] must also be considered.

In the case before us, the circuit court failed to consider whether or not *in personam* jurisdiction could be obtained over the five defendants under *W.Va.Code*, 56–3–33 [1984]. Furthermore, the record before us fails to indicate whether or not the five defendants have engaged in one of the acts specified in subsections (1) through (7) of

---

man v. Superior Toyota, Inc., 660 F.Supp. 401, 402 (N.D.W.Va.1987) (citation omitted). Our holding today is consistent with previous decisions.

4. *W.Va.Code*, 56–3–31(h)(3) [1990] defines nonresident:
    'Nonresident' means any person who is not a resident of this state or a resident who has

moved from the state subsequent to an accident or collision, and among others includes a nonresident firm, partnership, corporation or voluntary association, or a firm, partnership, corporation or voluntary association that has moved from the state subsequent to an accident or collision.

*W.Va.Code,* 56–3–33(a) [1984]. Since the circuit court failed to properly determine whether the defendants' actions satisfy our long-arm statutes, we do not reach the second step of the analysis: whether the defendants' contacts to the forum state satisfy federal due process concerns.

Accordingly, we remand the case to the circuit court to consider whether or not the defendants have engaged in one of the acts specified in subsections (1) through (7) of *W.Va.Code,* 56–3–33(a) [1984].

### V

In conclusion, we reverse the orders of the circuit court and remand this case to the circuit court so that further evidence may be developed in order to determine whether the cases involving the nonresident plaintiffs who were exposed to asbestos outside of West Virginia should be dismissed on the grounds of *forum non conveniens.* Additionally, further evidence needs to be developed in order to determine whether the five defendants were engaging in one of the activities listed in subsections (1) through (7) of *W.Va.Code,* 56–3–33(a) [1984] so as to confer *in personam* jurisdiction on them.

*Reversed and remanded.*