No. 15-0819 – *State of West Virginia ex rel. American Electric Power Co., Inc. v. The Honorable David W. Nibert et al.*

LOUGHRY, Justice, dissenting:

**FILED**
**February 10, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Given the preponderance of factors that weigh heavily in favor of resolving the underlying action in our sister state of Ohio, the majority's decision rests on decidedly infirm grounds and, as a consequence, I am compelled to dissent. In affirming the circuit court's refusal to dismiss the underlying action on grounds of forum non conveniens, the majority adopted the circuit court's improper focus on the existence of minimal contacts with this state while intentionally overlooking the clear indicia which demonstrate that Ohio, and not West Virginia, is the preferred forum for this matter based on the controlling *statutory* factors. *See* W.Va. Code § 56-1-1a (2012).

At the center of the suit below are allegations of harm arising from exposure to fly ash at a landfill in Gallia County, Ohio, where the plaintiffs or their family members worked. Nine of the seventy-seven plaintiffs are residents of West Virginia; fifty-six of the plaintiffs are residents of Ohio.[1] In making its decision that the action should remain in West Virginia, the circuit court confused notions of general venue with the principle at issue: *whether there is a more appropriate forum outside this state to try the underlying case*. Of

---

[1]The remaining twelve plaintiffs reside in Kentucky or elsewhere.

1

further and critical import is the trial court's mistaken notion that the doctrine of forum non conveniens does not apply when one of the plaintiffs is a resident of the forum in which the lawsuit is filed. Because the trial court's ruling is replete with both procedural and substantive error, the majority's refusal to issue the writ of prohibition sought by the petitioners only served to exacerbate that error.

The circuit court's misdirected analysis began with its identification of *Abbott v. Owens-Corning Fiberglass Corp.*, 191 W.Va. 198, 444 S.E.2d 285 (1994), *superseded by statute as stated in State ex rel. Ford Motor Co. v. Nibert*, 235 W.Va. 235, 773 S.E.2d 1 (2015), as "still controlling law" on the issue of forum non conveniens. *Abbott*–a decision applying common law principles of forum non conveniens–was legislatively abrogated with the enactment of West Virginia Code § 56-1-1a in 2007. *See Nibert*, 235 W.Va. at 240, 773 S.E.2d at 6 (remanding based on trial court's failure to recognize that *Abbott* was superseded by enactment of W.Va. Code § 56-1-1a); *Mace v. Mylan Pharmaceuticals, Inc.*, 227 W.Va. 666, 671 n. 3, 714 S.E.2d 223, 228 n.3 (2011) (discussing common law doctrine of forum non conveniens and subsequent codification of separate forum non conveniens statute in response to *Morris v. Crown Equip. Corp.*, 219 W.Va. 347, 633 S.E.2d 292 (2006)); *accord Savarese v. Allstate Ins. Co.*, 223 W.Va. 119, 122-23 n.8, 672 S.E.2d 255, 258-59 n.8 (2008). While the circuit court also utilized the eight factors set forth in West Virginia Code § 56-1-1a, the decision it reached was greatly influenced, and arguably tainted, by this Court's pre-

2

statutory decision in *Abbott.*[2]  As this Court has made clear in our decisions issued after the enactment of the forum non conveniens statute, the statute is the controlling and governing law on whether "in the interest of justice and for the convenience of the parties" a case should be "heard in a forum outside this State."  W.Va. Code § 56-1-1a(a); *State ex rel. Mylan v. Zakaib*, 227 W.Va. 641, 649 n. 6, 713 S.E.2d 356, 364 n.6 (2011).

Through its decision, the majority has inexplicably and unwisely resurrected the *Abbott* decision.  Not once since the enactment of West Virginia Code § 56-1-1a has this Court relied upon or even cited favorably to *Abbott* in resolving a motion for forum non conveniens.  With the adoption of our forum non conveniens statute, and the doctrine's codification, the common law precedent was superceded.  Until now, this Court has been clear in each of its decisions to reinforce the controlling effect of  West Virginia Code § 56-1-1a.  Through its lengthy and repeated recitation of the trial court's reasoning and its multiple references to *Abbott,* the majority has arguably muddied the waters of statutory forum non conveniens. While giving lip service to the fact that a forum non conveniens motion is to be governed by statute and not "our cases decided before the promulgation of

---

[2]Not only does the circuit court state at the outset of its ruling that it "finds the reasoning in *Abbott . . .* persuasive," but it further states that "*Abbott* is still controlling law." Among the repeated references to *Abbott* that appear in the ruling, the circuit court found that "*Abbott* makes clear that a defendant seeking dismissal must provide a detailed showing of the additional expenses incurred by litigating in West Virginia, and the expenses must be substantial."  That court-imposed requirement of demonstrating a quantitative increase in litigation costs does not appear in the statute.  *See* W.Va. Code W.Va. Code § 56-1-1a.

said statute,"[3] the majority, through its recurring approval of the trial court's reasoning and extensive quoting from that reasoning, appears to be sanctioning a continued and improper reliance on *Abbott*.[4] In marked contrast to the Court's decision in *Nibert,* where remand was required due to the absence of clear application of the statutory factors set forth in West Virginia Code § 56-1-1a and improper reliance on *Abbott*, the majority does not call into question the basis of the circuit court's ruling despite the trial court's repeated reliance on non-controlling precedent.[5] As a result, rather than steering the circuit courts of this state away from *Abbott*, the majority seems to be, with a wink and a nod, suggesting that you may apply this Court's pre-statutory precedent as long as you throw in an obligatory mention of the statutory factors.[6]

---

[3]*State of West Virginia ex rel. American Electric Power Co. et al. v. Honorable David W. Nibert*, No. 15-0819, __ W.Va. ___ n.5, __ S.E.2d ___ n.5 (W.Va. February 10, 2016).

[4]I find it telling that despite the lip service given in footnote 5 to the statutory control of this issue, the majority wholly avoids any criticism or even comment on the trial court's repeated reference to and reliance on *Abbott*.

[5]I submit that you cannot discern from the face of the trial court's order that the actual basis for the ruling was West Virginia Code § 56-1-1a, rather than the *Abbott* decision. And, in light of this error in applying the law, the petitioners correctly recognized that the standard of review is *de novo* and not an abuse of discretion. *See Nibert*, 235 W.Va. at __, 773 S.E.2d at 5 (applying *de novo* review where, as here, petitioners asked this Court to decide whether the trial court "erroneously based its decision on the *Abbott* case").

[6]As an additional observation, this Court should not be "rewarding" attorneys who wrongly cite to cases of limited or questionable application without acknowledgment and thereby steer the trial courts in the wrong direction.

Besides its erroneous reliance on *Abbott*, the trial court's order demonstrates confusion with regard to applying principles of forum non conveniens. Citing to law that was included in a previous venue statute,[7] the trial court corrupted its ruling in this case with an improper focus on matters of venue and joinder.[8] Furthermore, the trial court discounted the petitioners' arguments with regard to the existence of an alternate forum based solely on the existence of a West Virginia plaintiff. Numerous courts have applied the doctrine of forum non conveniens when a resident's suit is determined to have been filed in an inconvenient forum. *See, e.g., Davis v. Davis,* 957 A.2d 576 (D.C. 2008) (affirming dismissal of resident's suit against Mississippi defendant on grounds of forum non conveniens where alternate forum determined to have more connection to matters in dispute); *Warlop v. Lernout*, 473 F.Supp.2d 260 (D. Mass. 2007) (granting forum non conveniens motion despite presence of resident class members); *V.G. Marina Mgmt. Corp. v. Wiener,* 787 N.E.2d 344 (Ill. App. 2003) (affirming dismissal of resident's suit on forum non conveniens grounds); *New Amsterdam Cas. Co. v. Estes*, 228 N.E.2d 440, 445 (1967) (observing that suits by state's residents are "subject to the considerations of policy underlying the doctrine of forum non conveniens" and are not "shield[ed] . . . from the operation of that doctrine").

---

[7]W.Va. Code § 56-1-1(c) (2003).

[8]By definition, as we explained in syllabus point eight of *Mace*, "dismissal of a claim or action on the basis of forum non conveniens presupposes at least two forums in which the defendant is amenable to process." 227 W.Va. at 668, 714 S.E.2d at 225.

Turning to the statutory factors that control the outcome of this case, only three of the eight factors were in dispute. This is because the plaintiffs, as the record demonstrates, had conceded factors (1) the existence of an alternate forum; (3) that the alternate forum could exercise jurisdiction over the parties; (4) the state in which the plaintiff(s) reside; (5) the state in which the cause of action accrued; and (8) that the alternate forum provides a remedy. Consequently, the only statutory factors that were truly disputed on the issue of whether this case should be tried in Ohio, were factors (2) whether maintenance of the action in West Virginia would work a substantial injustice to the petitioners; (6) whether the balance of the private interests of the parties and the public interest of West Virginia predominate in favor of the action being tried in Ohio; and (7) whether dismissing the claim would result in unreasonable duplication or proliferation of litigation.

Beginning with factor two, the circuit court and the majority simply got it wrong. The only basis given by the trial court for its ruling on this factor was the existence of a West Virginia defendant and the amenability of the defendants to personal jurisdiction. Rather than addressing the wholesale inapplicability of venue concerns to a factor predicated on the issue of whether the defendants would be judicially harmed by maintenance of the suit in West Virginia, the majority chose instead to contrast the facts of this case to previous

forum non conveniens cases.[9] Falling into the net improperly cast by the respondents, the majority seized upon a minimum contacts analysis,[10] by mentioning the ties of the petitioners to this state and then proceeding to spell out the mileage between the court houses to the situs of the alleged exposure.[11] In taking this tack, the majority goes seriously astray of the subject factor.

In support of the factor aimed at examining the possibility of substantial injustice, the petitioners argued to the circuit court that the respondents' complaint involves novel legal theories and issues of first impression that have yet to be decided by the state of Ohio. There is no dispute that the substantive law of Ohio law, and not West Virginia law, will govern this matter as the situs of the cause of action exists in and is confined to Ohio. As a result, the petitioners argued below that the need to involve the Ohio courts to resolve

[9]These cases, as we recognized in *State ex rel. North River Insurance Co. v. Chafin*, 233 W.Va. 289, 295, 758 S.E.2d 109, 115 (2014), will always turn on a unique set of facts and thus the weight to be attributed to any one factor will vary substantially.

[10]Such an analysis would only be relevant if the issue was one of jurisdiction but it is not. The defendants are not challenging the reach of the West Virginia courts in terms of jurisdiction; their challenge is predicated solely on the existence of a more appropriate forum.

[11]It stands to reason that a mileage differential has little to no bearing on the issues relative to trying this matter that are rooted in compulsory process. This state's procedural rules are wholly inapplicable with regard to the issuance of subpoenas to Ohio residents. And while the Ohio plaintiffs may be willing to travel to West Virginia, there may be numerous former AEP employees who are Ohio residents who are unwilling to participate in a trial in this action. Those are the types of factors that the majority should have addressed rather than the state of equipoise with regard to the distance between the opposing court houses and the landfill.

7

matters of undecided law would cause further delays in the litigation of this matter in West Virginia. Deferring heavily to the circuit court on this issue, the majority simply deemed the trial court the best judge both with regard to the management of its docket and to its professed ability to apply Ohio law.

The sixth factor requires a balancing of the private interests of the parties and the public interest of West Virginia in maintaining this action. This statutory factor sets forth multiple issues for consideration and begins with an examination of whether the subject "injury or death resulted from acts of omissions that occurred in this state." W.Va. Code § 56-1-1a(a)(6). Identifying the private interests that relate to trying the case in this state, the statute enumerates a litany of litigation-related concerns such as the ease of access to sources of proof; the availability of compulsory process for attendance of *unwilling witnesses*; the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (emphasis supplied). Glossing over both the additional expense and the additional time required to seek out-of-state subpoenas from the Ohio courts, the trial court faults the petitioners for not identifying a sum specific for its additional expenses to try this case in West Virginia and declares that the private factors tip the scale in favor of the respondents. The majority's agreement with the trial court on this issue demonstrates a woeful ignorance of what is involved in gathering evidence and trying a case of this size. Viewing the

8

production of witnesses and evidence as a minor matter, easily accomplished by virtue of the voluntary submission of the Ohio plaintiffs to the jurisdiction of this state, the majority effectively ignores the issue of compulsory compliance. The statute seeks to determine the costs of compelling the *unwilling* witnesses, not the willing witnesses. *See id.* The plaintiffs are not the parties that the petitioners will have difficulty compelling: it is the former plant employees and any lay and medical witness who are beyond the subpoena power of the West Virginia courts that will present problems.[12] Simply put, the majority, like the circuit court, categorically dismissed any real concern for the increased costs or difficulties that the petitioners will incur in trying this case in West Virginia.

Turning to the second part of factor six–the public interest that this state has in maintaining the cause of action–requires an examination of administrative difficulties related to maintaining the action in this state,[13] the interest in having localized controversies decided within this state, the avoidance of unnecessary problems in conflict of laws or in the application of foreign laws,[14] and the unfairness of burdening citizens in an unrelated forum

---

[12]The respondents conceded that many non-party witnesses reside in Ohio and thus will not be subject to this state's compulsory process.

[13]*See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947) (defining judicial administration to include removal of cases bearing no relationship to locality from forum court's docket and avoiding unnecessary interpretation of another jurisdiction's laws).

[14]As already discussed above, the need to rely exclusively upon Ohio law and the involvement of issues that are likely to require certification to the Ohio Supreme Court for resolution, clearly bodes against West Virginia retaining this case.

with jury duty. W.Va. Code § 56-1-1a(a)(6). Missing the boat on this second aspect of factor six also, the majority buys lock, stock and barrel into the faulty reasoning of the trial court. The trial court opined that Mason County citizens have a right to decide this case because, they too, have been subjected to exposure to coal combustion waste. In framing the issue of whether a West Virginia jury has an interest in this matter in personal terms that are patently beyond the scope of the allegations–exposure from a landfill rather than ambient air exposure from coal-fired power plants–the circuit court and then the majority have gone seriously astray of the statutory objective. The legislatively-declared focus in a motion for forum non conveniens is to decide whether it makes sense to try this matter in West Virginia in comparison to the alternate available forum. As the petitioners rightly observe: "No good reason exists for a West Virginia jury to be called upon to decide a case which originated in Ohio, must be decided under Ohio law, and involves only 9 of 77 plaintiffs who reside in West Virginia."

The final contested factor–number seven–looks at whether a dismissal would result in unreasonable duplication or proliferation of litigation. In making its finding on this factor, the trial court again displayed its misapprehension that this case could not be dismissed under the general venue statute–W.Va. Code § 56-1-1. That finding is clearly unrelated to the issue of duplicative litigation. As a result, the trial court's finding on the issue of duplicative costs–that the majority rubber stamped–is seriously flawed. Other than

10

the initial costs related to the refiling of the action in Ohio, there is little reason to believe that the costs of trying this action just miles away from its initial filing would greatly increase the overall costs of this litigation or unnecessarily delay its resolution.

When the focus is properly framed on the correct issues–where this case should be tried given the location of the alleged injury-causing event in view of the quantity of out-of-state plaintiffs and the clear need to employ both substantive and procedural Ohio laws to try this matter–there is only one conclusion.  Ohio is the obvious answer.  For this Court to affirm the lower court's decision raises the unwelcome hint of "home cooking" and forum shopping:  two constructs that the majority of this Court should have taken more pains to consider before casually approving the flawed reasoning and decision of the circuit court. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) (commenting that deference afforded to plaintiff's choice of forum is limited if there are indicia of forum shopping).

As I previously observed in my dissent to *Nibert*, the forum non conveniens statute is written in mandatory terms and directs a court to "decline to exercise jurisdiction under the doctrine of forum non conveniens" when the movant demonstrates that there is an alternative forum that is preferential in terms of serving the interests of justice and providing for the convenience of the parties.  W.Va. Code § 56-1-1a(a), *Nibert,* 235 W.Va. at __, 773

11

S.E.2d at 11 (Loughry, J., dissenting). The petitioners unquestionably demonstrated the existence of an alternate forum which is, hands down, the preferred tribunal in which to resolve the matters at issue in this case. The majority's decision to deny the petitioners' motion to dismiss on forum non conveniens grounds on the facts of this case was a judicial mistake of lasting consequences. The finite judicial resources of this state will be required to untangle this litigation that could best be handled by the courts of the state in which the majority of the plaintiffs reside and in which the alleged tortious conduct undisputedly took place. To volunteer to give away our scarce judicial resources and to require this state's citizens to give up either their work hours or their personal time to sit on a jury to consider matters entrenched in Ohio law when Ohio could resolve this matter more expeditiously at no cost to this state's citizens was not only improvident but markedly myopic. *See Gulf Oil v. Gilbert*, 330 U.S. 510, 508 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). As a final observation, a possible ramification from this decision is that border state employers may simply decide not to employ our citizens if the end result is that West Virginia courts are unwilling to dismiss cases that deserve to be tried in their states "in the interests of justice and for the convenience of the parties." W.Va. Code § 56-1-1a(a).

Accordingly, I respectfully dissent.