961 F.2d 100
 58 Fair Empl.Prac.Cas. (BNA) 721,
58 Empl. Prac. Dec. P 41,386, 60 USLW 2683,
74 Ed. Law Rep. 51
 Bea JACOBSON; Thirileen King; Bonita White; Clarice
Cummings; Martha Retic; Marilyn Rosser; Linda
Young; Rosa Montgomery; Cincinnati
Federation of Teachers,
Plaintiffs-Appellants,
v.
CINCINNATI BOARD OF EDUCATION; Lee Etta Powell, Defendants-Appellees.
 Nos. 90-3739, 90-3840.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 5, 1991.
Decided March 31, 1992.
 
 Donald J. Mooney, Jr. (argued and briefed), Benesch, Friedlander, Coplan & Aronoff, Cincinnati, Ohio, for plaintiffs-appellants.
 David T. Croall (argued and briefed), James K.L. Lawrence, Frost & Jacobs, John P. Concannon, Cincinnati Public Schools, Cincinnati, Ohio (briefed), for defendants-appellees.
 Trudy Donath Rauh, Laufman, Rauh & Gerhardstein, Cincinnati, Ohio, William L. Taylor, Washington, D.C. (argued and briefed), for amici curiae Mona Bronson et al.
 Before: KENNEDY and NORRIS, Circuit Judges; and MILES, Senior District Judge.*
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Eight Cincinnati public school teachers and the Cincinnati Federation of Teachers ("CFT"), the union that represents them, brought suit in the district court challenging the teacher transfer policy adopted by the Cincinnati Board of Education ("Board") to ensure that the faculty of its schools reflects system-wide racial balance. After an evidentiary hearing, the district court concluded that the policy did not violate either plaintiffs' Fourteenth Amendment right to equal protection or the terms of the collective bargaining agreement ("CBA") negotiated by the CFT and the Board. Accordingly, the district court denied plaintiffs' request to enjoin the transfer policy. For the reasons outlined below, we affirm the judgment of the district court.
 
 
 2
 This dispute has its genesis in the 1970s, when concerted efforts to eradicate indicia of racial segregation within the Cincinnati public school system began. On January 14, 1974, the Board adopted a policy designed to ensure that the teaching staff of a given school approximated the racial balance of the teaching staff of the system as a whole. Shortly thereafter, the Board issued a statement indicating how this general policy would be implemented. Among other things, the statement provided that the percentage of black teachers in any school should not be five percent greater or less than the percentage of black teachers throughout the system. In order to implement this racial balance, the policy restricts the ability of some teachers to voluntarily transfer to other school buildings, and requires the reassignment of others. It is this portion of the policy which plaintiffs challenge.[1]
 
 
 3
 In the same year that these efforts to balance the racial composition of the faculty were initiated, a group of school children and their parents filed a lawsuit against the Board, contending that the school system was unlawfully segregated. That suit was ultimately settled by the parties, and the district court adopted the settlement agreement as a consent decree. Bronson v. Board of Educ., 604 F.Supp. 68 (S.D. Ohio 1984). Paragraph 5 of the settlement agreement reads as follows:
 
 
 4
 The Cincinnati Board of Education currently has in force a policy which requires that the staff in each of its schools has a racial composition which is within 5% of the racial composition of the staff in the district as a whole. The Board shall maintain that policy in effect and take steps necessary to assure that it is enforced.
 
 
 5
 The CFT actively participated in the resolution of Bronson and did not object to the maintenance of the staff racial balance policy. The position of the CFT is reflected in the CBA negotiated with the Board. Section 250, paragraph 1, of the CBA contains the following provision regarding teacher transfers: "Teacher requests for transfer will be honored if positions are available and the teacher is qualified for a particular vacancy, provided that the transfer is consistent with the racial balance of the staff."
 
 
 6
 We begin by noting that school authorities have broad discretion to implement educational policy. Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). This authority includes the power to prescribe a ratio of white to minority students that reflects the composition of the overall school district, particularly when such a policy is implemented in order to prepare students for life in a pluralistic society. Id. And we believe that this discretionary authority includes the power to assign faculty to achieve a racial ratio reflecting the racial composition of the system's teachers. The Supreme Court has recognized that the attainment of an integrated teaching staff is a legitimate concern in achieving a school system free of racial discrimination. United States v. Montgomery County Bd. of Educ., 395 U.S. 225, 231-32, 89 S.Ct. 1670, 1673-74, 23 L.Ed.2d 263 (1969).
 
 
 7
 Here, the district court found that the policy adopted by the Board is race conscious in the sense that it allows the Board to determine the schools at which a teacher may teach solely on the basis of his or her race. However, the court went on to find that the policy is "specific race neutral in that there is no disparate impact as to race in its application. It is applied equally to both black and white teachers. In some instances, it will benefit or harm white teachers; in others, it will benefit or harm black teachers." We agree with that characterization. We are therefore unable to agree with plaintiffs' contention that the policy establishes preferences based on race that require us to examine the policy with strict scrutiny to determine whether it conflicts with guarantees afforded them under the Constitution.
 
 
 8
 Under analogous circumstances, the Court of Appeals for the Third Circuit offered these observations concerning the appropriate level of scrutiny to which such a policy should be subjected:
 
 
 9
 No case has suggested that the mere utilization of race as a factor, together with seniority, school need, and subject qualification, is prohibited. Since the classification is not preferential, it might most appropriately be reviewed for its rational relationship to a legitimate government objective, under which standard it would be patently valid. At most, since there is some element of racial classification, albeit not of preference, the appropriate level of scrutiny would be the intermediate level suggested by four members of the Court in Bakke, in which the classification was indeed preferential.
 
 
 10
 The appropriate question under that standard is whether the classification "serve[s] important governmental objectives" and is "substantially related to achievement of those objectives."
 
 
 11
 Kromnick v. School Dist., 739 F.2d 894 (3d Cir.1984) (citing Regents of the Univ. of Cal. v. Bakke, 438 U.S. 265, 359, 98 S.Ct. 2733, 2783, 57 L.Ed.2d 750 (1978) (Brennan, White, Marshall & Blackmun, JJ., concurring and dissenting)), cert. denied, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985).
 
 
 12
 In our view, this intermediate level of scrutiny is the proper one, since the Cincinnati teacher transfer policy, like the policy challenged in Kromnick, does not prefer one race over another. Accordingly, we must determine whether the policy is substantially related to an important governmental objective. We believe the policy at issue meets that test. It was implemented to achieve a racially integrated faculty throughout the Cincinnati public school system. Not only is this a legitimate objective, it has been endorsed in the past by the CFT. In fact, section 250 of the CBA, which appellants mistakenly contend has been violated by the Board, expressly allows for the accommodation of such a transfer policy.
 
 
 13
 We therefore hold that plaintiffs have failed to demonstrate how their interest in selecting the schools to which they are assigned outweighs the Board's interest in fostering an integrated, pluralistic school system.
 
 
 14
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Plaintiffs Bea Jacobson and Linda Young are white teachers at Carson Elementary School, a Montessori alternative which is below the minimum minority standard. They were told that if black teachers could be found to replace them, they would be transferred to another school. Replacements were found and they were informed of their impending transfer. Plaintiffs Martha Retic and Marilyn Rosser are black teachers at Carson who were denied transfers. Plaintiff Rosa Montgomery is a black teacher who was denied a transfer from Roberts Paideia, which is also below the minimum. Plaintiffs Thirileen King, Bonita White and Clarice Cummings are black teachers who were denied transfers from Sands Elementary School, which was below the minimum