481 S.E.2d 753

**Kelly Fry LANE, Administrator of The Estate of Nelda S. Fry, Deceased, Plaintiff Below, Appellant,**

v.

**BOSTON SCIENTIFIC CORPORATION; The Rector and Visitors of The University of Virginia, The Commonwealth of Virginia; Eric R. Powers, M.D., Marc David Feldman, M.D.; Ian Sarembock, M.D., Jay M. Kalan, M.D.; and The University of Virginia Health Services Foundation, Defendants Below, Appellees.**

No. 23281.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1996.

Decided Dec. 13, 1996.

Guy R. Bucci, Janet E. James, Bucci & Chambers, Charleston, and Bruce D. Rasmussen, Michie, Hamlett, Lowry, Rasmussen & Tweel, Charlottesville, Virginia, for Appellant.

James J. Rowe, Haynes, Ford & Rowe, Lewisburg, and Dabney J. Carr IV, Mays & Valentine, Richmond, Virginia, for Appellee Boston Scientific Corporation.

Jonathan P. Jester, Sands, Anderson, Marks & Miller, Richmond, Virginia, for Appellees Jay M. Kalan, M.D., Commonwealth of Virginia, and the Rector and Visitors of the University of Virginia.

Mark S. Brennan, Sr., Wright, Robinson, Othimer & Tatum Richmond, Virginia, for Appellees University of Virginia Health Services Foundation, Ian Sarembock, M.D., Marc Feldman, M.D. and Eric R. Powers, M.D.

PER CURIAM:

This case is before this Court on appeal from the February 1, 1995 order of the Circuit Court of Monroe County, West Virginia, granting the nonresident defendants' motions to dismiss for lack of personal jurisdiction, pursuant to *W. Va. R. Civ. P.* 12(b)(2).

This Court[1] has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For reasons discussed below, the order of the circuit court is affirmed.

## I.

On or about January 21, 1992, Nelda S. Fry, who suffered from rheumatic heart disease, underwent a mitral valvuloplasty, or mitral valve procedure, at the University of Virginia Hospital in Charlottesville, Virginia. During the procedure, defendants Marc Feldman, M.D., Eric Powers, M.D. and Ian Sarembock, M.D., all residents of and licensed to practice medicine in the Commonwealth of Virginia, inserted a balloon catheter into Mrs. Fry's heart and attempted to inflate it. The catheter, which was allegedly manufactured by defendant Boston Scientific Corporation in Watertown, Massachusetts, punctured Mrs. Fry's heart, causing her to go into cardiac arrest. Mrs. Fry died the next day in Charlottesville, Virginia.

On or about January 20, 1994, plaintiff Kelly Fry Lane, as administrator of the estate of her mother, who, at the time of her death, was a resident of Monroe County, West Virginia, filed a complaint in the Monroe County Circuit Court,[2] alleging negligence against Boston Scientific Corporation, Drs. Feldman, Powers and Sarembock,[3] and Dr. Jay Kalan, a resident of the Commonwealth of Virginia then employed at the University of Virginia Hospital as an interventional cardiology fellow who obtained Mrs. Fry's consent to perform the mitral valve procedure. Plaintiff also alleged negligence against the Commonwealth of Virginia, which owns and operates the University of Virginia Hospital; the Rector and Visitors of the University of Virginia, an organ of the Commonwealth of Virginia; the University of Virginia Health Sciences Foundation, a billing and collection entity which collects fees for professional medical services rendered by, among others, physicians who are employed jointly by the University of Virginia Health Services Foundation and the Commonwealth of Virginia as faculty of the University of Virginia Medical School.

Plaintiff further alleged strict liability and breach of warranties against Boston Scientific Corporation and vicarious liability against the Commonwealth of Virginia, the Rector

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. On or about that same date, plaintiff also filed a similar complaint in the Circuit Court for the City of Richmond, Virginia. According to plaintiff's brief, at her request, the defendants were not served with the Virginia complaint but rather, it was filed "simply to preserve and protect the plaintiff's rights to a decision on the merits should the West Virginia action be dismissed on jurisdictional grounds." Plaintiff's brief further states that

> [d]espite the fact that the plaintiff never requested that service be made, the defendants in the Virginia action located the complaint and then filed motions to dismiss, defenses, cross-

claims, and objections to venue and motions to transfer venue, and a plea of sovereign immunity. Their motions to dismiss were granted, though no order has been issued and there was no adjudication on the merits.

3. According to defendants, when plaintiff served a "notice of medical malpractice claim" on defendants Feldman, Powers and University of Virginia Health Services Foundation on June 12, 1992, Virginia law at that time required that a hearing be conducted before a medical malpractice review panel in Virginia before a medical malpractice action could be filed in that state.

Following an *ore tenus* hearing before a medical malpractice review panel on January 18, 1993, the panel unanimously determined that "[t]he evidence does not support a conclusion that the health care providers failed to comply with the appropriate standard of care."

Defendants point out that, under *Va.Code Ann.* § 8.01–581.8 (Michie 1978), the medical malpractice review panel's decision is admissible in any subsequent medical malpractice action in Virginia.

and Visitors of the University of Virginia and the University of Virginia Health Services Foundation.

It is undisputed that all of the defendants herein are nonresidents [4] of West Virginia. Accordingly, all of the defendants subsequently filed motions to dismiss this action in the Circuit Court of Monroe County, for lack of personal jurisdiction, pursuant to *W. Va. R. Civ. P.* 12(b)(2).[5]

Upon receipt of plaintiff's interrogatories and request for documents served on defendants on or about October 17, 1994, several months after defendants' motions to dismiss were filed, defendants Powers, Feldman, Sarembock and the University of Virginia Health Services Foundation, by motion filed November 9, 1994, requested that the circuit court enter a protective order to limit discovery in the case until the defendants' motions to dismiss for lack of personal jurisdiction were resolved. *See* n. 9, *infra.*

A hearing on defendants' motions to dismiss and motion for a protective order was conducted on November 29, 1994. By order entered February 1, 1995, the circuit court granted defendants' motions to dismiss. It is from this order that plaintiff now appeals.

## II.

The sole issue for our review is whether the circuit court properly granted defendants' motions to dismiss for lack of personal jurisdiction under *W. Va. R. Civ. P.* 12(b)(2).

## A.

As indicated above, all of the defendants herein are nonresidents of West Virginia. In syllabus point 5 of *Abbott v. Owens–Corning Fiberglas Corp.*, 191 W.Va. 198, 444 S.E.2d 285 (1994), this Court articulated the following analysis for determining whether a circuit court has personal jurisdiction over a nonresident or foreign corporation:

A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in *W. Va.Code*, 31–1–15 [1984] and *W. Va.Code*, 56–3–33 [1984]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

*W. Va.Code*, 56–3–33(a) [1984], this state's primary long-arm statute, confers *in personam* jurisdiction on a nonresident engaging in any of seven enumerated acts:

(a) *The engaging by a nonresident, or by his duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection* shall be deemed equivalent to an appointment by such nonresident of the secretary of state ... to be his true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him, in any circuit court in this State, ... *for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts* shall be a signification of such nonresident's agreement that any such process against him ... shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this State:

(1) Transacting any business in this State;

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State;

---

4.  " 'Nonresident' means *any person who is not a resident of this state* or a resident who has moved from the state subsequent to an accident or collision, *and among others includes a nonresident firm, partnership, corporation or voluntary association,* or a firm, partnership, corporation or voluntary association that has moved from the state subsequent to an accident or collision." *W. Va. Code,* 56–3–31(h)(3) [1990]. (emphasis added).

5.  *W. Va. R. Civ. P.* 12(b)(2) provides that
   [e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person[.]

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume or be affected by the goods in this State: Provided, That he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(6) Having an interest in, using or possessing real property in this State; or

(7) Contracting to insure any person, property or risk located within this State at the time of contracting.

(emphasis added).

West Virginia's second long-arm statute, specifically directed at foreign corporations, *W. Va.Code,* 31–1–15 [1984][6] provides, *inter alia,* that

*a foreign corporation* not authorized to conduct affairs or do or transact business in this State pursuant to the provisions of this article *shall nevertheless be deemed to be conducting affairs or doing or transacting business herein (a) if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, (b) if such corporation commits a tort in whole or in part in this State, or (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this State* notwithstanding the fact that such corporation had no agents, ser-

vants or employees or contacts within this State at the time of said injury. *The making of such contract, the committing of such tort or the manufacture or sale, offer of sale or supply of such defective product as hereinabove described* shall be deemed to be the agreement of such corporation that any notice or process served upon, or accepted by, the secretary of state pursuant to the next preceding paragraph of this section *in any action or proceeding against such corporation arising from, or growing out of, such contract, tort, or manufacture or sale, offer of sale or supply of such defective product* shall be of the same legal force and validity as process duly served on such corporation in this State.

(emphasis added).

### B.

It has been well-established in many jurisdictions that when a nonresident defendant makes a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing sufficient facts upon which the court may exercise jurisdiction over the defendant under the applicable personal jurisdiction statute.[7] *Combs v. Bakker,* 886 F.2d 673 (4th Cir. 1989); *Doe v. Roman Catholic Diocese of Boise,* 121 N.M. 738, 918 P.2d 17, 21 (App. 1996), *cert. denied,* 121 N.M. 693, 917 P.2d 962 (1996); *Knipple v. Viking Communications, Ltd.,* 236 Conn. 602, 674 A.2d 426, 429 (1996); *O'Connor, Cavanagh v. Bonus Utah, Inc.,* 156 Ariz. 171, 750 P.2d 1374 (App.1988); *Conley v. Boyle Drug Co.,* 570 So.2d 275 (Fla.1990); *Phelps v. Kingston,* 130 N.H. 166, 536 A.2d 740 (1987); *White v. Stephens,* 300 S.C. 241, 387 S.E.2d 260 (1990).

The trial court, when ruling on a motion to dismiss for lack of personal jurisdiction, may permit discovery to aid in its decision or it may resolve the issue either upon the plead-

---

6. *W. Va.Code,* 31–1–15 [1984] is an elaboration on the transacting business provision of *W. Va. Code,* 56–3–33(a) [1984], *supra. Abbott,* 191 W.Va. at 207, 444 S.E.2d at 294. Thus, in determining whether *in personam* jurisdiction may be exercised over a foreign corporation, both *W. Va.Code,* 31–1–15 [1984] and *W. Va.Code,* 56–3–33(a) [1984] must be considered. *See Id.*

7. If there is more than one defendant challenging personal jurisdiction, plaintiff must establish jurisdictional facts as to each. *See Clark v. Milam,* 830 F.Supp. 316, 319 (S.D.W.Va.1993). *See also Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516, 527 (1980).

ings and affidavits or through a pretrial evidentiary hearing. *Combs,* 886 F.2d at 676; *Market/Media Research v. Union–Tribune Pub. Co.,* 951 F.2d 102, 106 (6th Cir.1991), *cert denied,* 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992). *See CutCo Industries, Inc. v. Naughton,* 806 F.2d 361 (2d Cir.1986); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

If the court holds a full evidentiary hearing on the jurisdictional issue or if the issue is litigated at trial, the party asserting personal jurisdiction must demonstrate jurisdiction under the personal jurisdiction statute by a preponderance of the evidence. *Combs,* 886 F.2d at 676; *Doe,* 918 P.2d at 21 (*quoting* 2A James Wm. Moore, *Moore's Federal Practice,* ¶ 12.07 at 12–70 to 12–72 (2d ed.1995)); *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 n. 3 (9th Cir.1993).

When the court restricts its review of a Rule 12(b)(2) motion to the pleadings and affidavits, as it did in the present case, plaintiff need only make a *prima facie* showing that jurisdiction exists under the personal jurisdiction statute.[8] *Combs,* 886 F.2d at 676; *Doe,* 918 P.2d at 21; *I.B.M. v. Martin Prop. & Cas. Ins. Agency,* 281 Ill.App.3d 854, 217 Ill.Dec. 197, 199, 666 N.E.2d 866, 868 (1996); *CutCo Industries,* 806 F.2d at 365; *Fields v. Sedgwick Associated Risks,* 796 F.2d 299 (9th Cir.1986). For purposes of such review, the court must view the allegations in the pleadings in the light most favorable to the plaintiff, drawing all inferences in favor of jurisdiction. *See Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 62 (4th Cir.1993); *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988); 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 1351 (1990). *See also CutCo Industries,* 806 F.2d at 365. However, when a defendant challenges the existence of personal jurisdiction in a Rule 12(b)(2) motion to dismiss and includes with its motion "affidavits or depositions, ... the party resisting such motion may not stand on its pleadings and must come forward with affidavits or other proper evidence detailing specific facts demonstrating that the court has jurisdiction over the defendant." *Doe,* 918 P.2d at 21. *See Wolf v. Richmond County Hosp. Authority,* 745 F.2d 904, 908 (4th Cir.1984), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985) (" 'In ruling on a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, *except insofar as controverted by the defendant's affidavit,* must be taken as true.' " (emphasis added and citation omitted)); *Morgan v. Morgan,* 679 So.2d 342, 346 (Fla.Ct.App.1996); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 (3d Cir.1984).

In the present case, the Circuit Court of Monroe County reviewed defendants' motions to dismiss for lack of personal jurisdiction on the pleadings, affidavits and other documentary evidence.[9] To survive the de-

8. Though an action may survive a Rule 12(b)(2) motion to dismiss at the pretrial stage by establishing jurisdiction on a *prima facie* basis, the plaintiff must ultimately demonstrate jurisdiction by a preponderance of the evidence, either at trial or at an evidentiary hearing. *See CutCo Industries,* 806 F.2d at 365; *Marine Midland Bank,* 664 F.2d at 904.

9. Several weeks before the November 29, 1994 hearing on the defendants' motions to dismiss, plaintiff sent, apparently to all of the defendants, interrogatories and requests for documents. These interrogatories and requests for documents are not a part of the record on appeal and it is unclear if, and to what extent, they dealt with the personal jurisdiction issue. In any case, defendants Feldman, Powers and Sarembock and the University of Virginia Health Services Foundation subsequently filed a motion for a protective order to limit discovery in the case until defendants' motions to dismiss for lack of personal jurisdiction were resolved.

As previously indicated, the November 29, 1994 hearing on defendants' motions to dismiss was already scheduled when plaintiff made her discovery requests. The record does not reflect any request by plaintiff to continue or otherwise delay the November 29 hearing until discovery could be conducted. Plaintiff confirmed this fact at oral argument before this Court.

At the commencement of the November 29 hearing, plaintiff indicated that she had no evidence to offer on the jurisdictional issue and suggested that discovery was warranted to further develop the issue. After the various defendants argued their motions to dismiss, plaintiff did not then request that the trial court delay its decision on the motions so that she could conduct further discovery. In fact, plaintiff's counsel stated:

I don't want to give the appearance we weren't trying but *I'm not sure what fruit would bear from discovery.* We might wind up in motions for protective order which is exactly

fendants' various jurisdictional challenges, plaintiff was required to a establish a *prima facie* case of personal jurisdiction under this state's personal jurisdiction statutes.

As will be discussed below, the circuit court determined that plaintiff failed to satisfy step one of the analysis set forth in syllabus point 5 of *Abbott, supra*—that is, that the defendants' actions satisfied *W. Va.Code,* 56–3–33(a) [1984] and, where applicable, *W. Va. Code,* 31–1–15 [1981], our personal jurisdiction statutes. Because plaintiff did not establish a *prima facie* case of personal jurisdiction under these statutes, the circuit court concluded that it was not necessary to then determine whether the defendants' contacts with West Virginia satisfy federal due process, which is the second step of the analysis in *Abbott. See* discussion, *infra.*

### C.

#### *Plaintiff's Jurisdictional Assertions*

▮▮▮ Because the facts underlying the jurisdictional issue are important, they must be set forth in some detail. Plaintiff's complaint asserted the following facts relevant to the issue of personal jurisdiction:

3. Defendant BOSTON SCIENTIFIC CORPORATION (herein "Boston Scientific") upon information and belief, is a Massachusetts corporation with its principal place of business in Watertown, Massachusetts; was at all relevant times mentioned herein engaged in the design, manufacture, inspection, testing, distribution, marketing and sale of aortic valvuloplasty balloon dilation catheters (herein "the catheter") and sold these medical devices in the states of Virginia and West Virginia.

4. Defendant hospital, THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, is a corporation under § 23–69 of the Code of Virginia (1950, as amended), and is an agency of the Commonwealth of Virginia which owns and operates the University of Virginia Hospital with its principal place of business in Charlottesville, Virginia. UVA Hospital regularly solicits and conducts business in West Virginia and receives substantial revenues from residents of West Virginia.

5. Defendant COMMONWEALTH OF VIRGINIA operates UVA HOSPITAL which regularly solicits and conducts business in West Virginia and receives substantial revenues from resident [sic] of West Virginia.

. . . .

8. Defendant DOCTOR MARC DAVID FELDMAN (herein "Feldman") is a resident of Charlottesville, Virginia, and was at all times relevant licensed to practice medicine in the state of Virginia. In West Virginia he solicited and conducted business for the University of Virginia Department of Cardiology and received substantial revenues as a result of such business and treatment of West Virginia residents.

9. Defendant DOCTOR ERIC R. POWERS (herein "Powers") is a resident of Charlottesville, Virginia, and was at all times relevant licensed to practice medicine in the state of Virginia. He has conducted business in West Virginia, solicited business in West Virginia through agents and employees of UVA HOSPITAL, and he has received substantial revenues as a result of such business and treatment of West Virginia residents.

10. Defendant DOCTOR IAN SAREMBOCK (herein "Sarembock") is a resident of Charlottesville, Virginia, and was at all times relevant licensed to practice medicine in the state of Virginia. He has conducted business in West Virginia, solicited business in West Virginia through agents and employees of UVA HOSPI-

---

what happened anyway, in fact, sort of proved the point if we started discovery we all would have been here earlier haphazardly and I was hoping we could come down here on some sort of systematic basis.

Though plaintiff argues on appeal that she should have been afforded the opportunity for discovery on the jurisdictional issue, we find that she failed to make such a motion before the circuit court prior to its decision on the issue. Therefore, we find that plaintiff did not adequately preserve this issue for appellate review. Our review on appeal therefore is limited to whether the circuit court properly dismissed this action for lack of personal jurisdiction based upon the pleadings, affidavits and other documentary evidence then before it.

TAL, and has received substantial revenues as a result of such business and treatment of West Virginia residents.[10] (footnote added).

In addition, the trial court also had before it, on the issue of personal jurisdiction, an excerpt from defendant Dr. Feldman's testimony before the Virginia Medical Malpractice Review Panel, in which he stated that

[r]heumatic heart disease is a very rare condition today in this country, and it doesn't exist in many places, but it does still exist in West Virginia, which is one of my major referral areas. . . . [W]e have one of the . . . only major medical centers left getting a referral pattern from a place where rheumatic fever still exists: West Virginia.

It is plaintiff's contention that this defendant has "admitted the essential jurisdictional elements . . . that the UVA Hospital referral program depended on West Virginia businesses and actively solicited West Virginia patients."

Plaintiff further submitted to the trial court a quote attributed to defendant Dr. Feldman, in an unrelated case, wherein Dr. Feldman indicated that a patient, a James Adkins, was referred to him by a Dr. Jack Woodrum from West Virginia. Dr. Feldman testified in a deposition in that unrelated case that "I've also served as a cardiologist for patients of Dr. Woodrum, and I'm Dr. Woodrum's cardiologist as well."

The trial court also had before it a document indicating that the West Virginia Workers' Compensation Fund has both the University of Virginia Hospital and the University of Virginia Health Services Foundation on its "Provider Register."

## D.

### *Defendants' Jurisdictional Assertions*

As will be discussed in detail below, defendants, with the exception of the Commonwealth of Virginia and the Rectors and Visitors of the University of Virginia,[11] submitted affidavits, and, in the case of defendant Dr. Feldman, a declaration, in support of their respective motions to dismiss for lack of personal jurisdiction:

### *Boston Scientific Corporation*

In support of its motion to dismiss for lack of personal jurisdiction, filed on or about July 12, 1994, defendant Boston Scientific Corporation submitted to the trial court an affidavit by its Assistant General Counsel, Lawrence J. Knopf. Mr. Knopf indicated, in relevant part, that Boston Scientific, which manufactures and sells medical devices, including balloon dilatation catheters, is a corporation organized under the laws of the state of Delaware, with its principal place of business in Watertown, Massachusetts. Boston Scientific, which is not qualified to do business in West Virginia, maintains no registered agent here and, at no time, has maintained an office here. Mr. Knopf further indicated that Boston Scientific does not use, possess or own any interest in real property in West Virginia nor does it maintain any bank accounts here. Boston Scientific has

---

10. In addition to the above paragraphs in her complaint, plaintiff, in her reply brief to all appellees, also specifically refers to paragraph 11 of her complaint as "jurisdictional allegations that should be taken as true unless controverted by admissible evidence." Paragraph 11 of plaintiff's complaint states: "Defendant DOCTOR JAY M. KALAN (herein 'Kalan') is a resident of Arlington, Virginia, and was at all times relevant licensed to practice medicine in the state of Virginia."

We fail to see how the above paragraph alleges any fact relevant to the issue of whether the Circuit Court of Monroe County, West Virginia may properly exercise personal jurisdiction over this defendant.

11. In their motion to dismiss, the Commonwealth of Virginia and the Rector and Visitors of

the University of Virginia (hereinafter collectively referred to as "the Commonwealth") primarily argued that plaintiff's claims against them are barred under the Virginia Tort Claims Act, *Va. Code. Ann.* § 8.01–195.1 *et seq.* or, in the alternative, by the applicable statute of limitations. *Va. Code Ann.* § 8.01–195.7 (Michie 1992). The Commonwealth further argues that the doctrine of sovereign immunity also bars plaintiff's claims against it. These issues were not addressed by the circuit court. Moreover, in light of this Court's determination that the circuit court properly dismissed this action for lack of personal jurisdiction as to all defendants, including the Commonwealth, it is not necessary that we address these issues on appeal.

never contracted to insure any person, property or risk located within West Virginia.

Furthermore, Mr. Knopf stated that Boston Scientific's contacts with the state of West Virginia are limited to visits by five sales representatives, one for each of the corporation's five principal divisions. These sales representatives intermittently visit the medical facilities in West Virginia which purchase Boston Scientific's products. Though they promote Boston Scientific's products, disseminate information about those products, and receive orders from potential purchasers, the sales representatives are not authorized to enter into sales contracts on behalf of Boston Scientific. Rather, all contracts for sale of Boston Scientific's products are formed at Boston Scientific's location in Massachusetts and all such contracts are likewise performed in Massachusetts.

According to Mr. Knopf's affidavit, any product manufactured by Boston Scientific and used at the University of Virginia Hospital would have been manufactured in Massachusetts and delivered in Virginia and would not have entered West Virginia. Moreover, no employee or agent of Boston Scientific has entered West Virginia in connection with the events allegedly giving rise to plaintiff's claims.

### Dr. Marc Feldman

In his declaration submitted in support of his motion to dismiss for lack of personal jurisdiction, filed on or about August 3, 1994, Dr. Feldman, a cardiologist and internist, indicated that he was Mrs. Fry's attending physician at the University of Virginia Hospital at the time of her death. Dr. Feldman did not solicit Mrs. Fry for treatment, but rather, she was referred to him by Dr. Stephen Walter, an internist practicing in West Virginia. All of the medical care Dr. Feldman rendered to Mrs. Fry took place at the University of Virginia Hospital.

Dr. Feldman further indicated that he has never been licensed to practice medicine in West Virginia but that on one prior occasion, two to three years earlier, he rendered medi-

cal services in the state of West Virginia when he provided coverage for a physician in Lewisburg, West Virginia. Dr. Feldman was paid approximately $700 for his afternoon of services.

Dr. Feldman's only other contact with West Virginia was his participation as a lecturer at approximately five continuing medical education seminars sponsored by pharmaceutical/drug companies. Dr. Feldman stated that he did not solicit business or referrals at these seminars and that he has never solicited patients or referrals from or in West Virginia. Finally, Dr. Feldman indicated that, other than the limited activities described above, he had not transacted any medical-related activities or engaged in any professional or business activities in West Virginia, nor had he solicited business, advertised or engaged in any course of conduct or derived any revenue from goods used or consumed or services rendered in West Virginia.

Dr. Feldman further stated that he had not entered into any contracts with a resident of West Virginia to be performed by any party in West Virginia. He does not own, use or possess property in West Virginia.

### Drs. Powers, Sarembock and Kalan [12]

According to their affidavits filed in support of their motions to dismiss, Drs. Powers, Sarembock and Kalan were, at the time of Mrs. Fry's death, residents of the Commonwealth of Virginia. None of these three defendant physicians have ever been licensed to practice medicine in West Virginia nor have they ever practiced medicine or otherwise provided medical services here.

Dr. Powers stated that his only contacts with Mrs. Fry, in person or otherwise, occurred approximately one month prior to the mitral valve procedure when he rendered medical services to her in the cardiac catheterization laboratory at the University of Virginia Hospital, and again, on January 21, 1992, when he assisted Dr. Feldman in the

12. Drs. Powers and Sarembock's motion to dismiss was filed on or about July 12, 1994 and Dr. Kalan's, on or about August 15, 1994.

mitral valve procedure. Dr. Sarembock stated that his only contact with Mrs. Fry was when he assisted Drs. Feldman and Powers during the mitral valve procedure on January 21, 1992.

Neither Dr. Powers nor Dr. Sarembock prescribed medication for Mrs. Fry to be filled by a pharmacist in West Virginia or to be taken by her in West Virginia.

Dr. Sarembock stated that the only activities in which he participated in West Virginia were two continuing medical education lectures which he gave three to four years earlier. These lectures were neither sponsored by nor connected to his medical practice or employment at the University of Virginia.

Both Drs. Powers and Sarembock stated that they had never solicited any patients from West Virginia nor had they ever transacted any medical-related business or engaged in any professional or business activities here, either on their own behalf or on the behalf of any other individual or entity.

Neither Dr. Powers nor Dr. Sarembock had ever solicited business in West Virginia nor had they derived any revenue from goods or services rendered, used or consumed here. Neither of these two defendants had entered into any contracts anywhere to supply medical services or goods to anyone in West Virginia. They, likewise, had never entered into any contracts with a resident of West Virginia to be performed by any party in West Virginia. Neither of these two defendants owns, uses or possesses real property in West Virginia.

At the time of Mrs. Fry's death, Dr. Kalan was in training at the University of Virginia Hospital as an interventional cardiology fellow. His only contact with Mrs. Fry was on January 20, 1992 when he spoke with her and obtained her consent for the mitral valve procedure. According to Dr. Kalan's affidavit, he had no right, in his capacity as a fellow in training, to either choose or refuse patients, nor did he receive from patients any compensation, either directly or indirectly. Dr. Kalan's only compensation while at the University of Virginia Hospital was a trainee salary from the Commonwealth of Virginia.

Dr. Kalan owned no property in West Virginia. He never solicited any patients or referrals of patients from West Virginia nor had he ever transacted any medical-related business or engaged in any professional business activities here, either on his own behalf or on behalf of other individuals or institutions here. Dr. Kalan owned no property in West Virginia and had never had any business address or contact with West Virginia. This defendant had not derived any revenue from goods or services rendered, used or consumed here, nor had he entered into any contracts anywhere to supply any medical services or goods to anyone in or located in West Virginia.

Finally, according to Dr. Kalan, he had never solicited business, advertised or engaged in any course or conduct or derived any revenue from goods or services used, consumed or rendered in West Virginia, nor had he entered into any contracts with a West Virginia resident to be performed here by any party.

### The University of Virginia Health Services Foundation

According to the affidavit of Rebecca Woody, corporate counsel and registered agent for defendant University of Virginia Health Services Foundation (hereinafter "Health Services Foundation"), filed in support of its motion to dismiss on or about August 10, 1994, defendant Health Services Foundation, a Virginia nonstock corporation, is primarily a billing and collection entity which collects fees for professional medical services rendered by, among others, physicians who are jointly employed by the Health Services Foundation and the Commonwealth of Virginia as faculty of the University of Virginia Medical School.

The Health Services Foundation never had an office in West Virginia. In particular, it never had contact with Mrs. Fry in West Virginia prior to her treatment at the University of Virginia Hospital.

This defendant had not transacted any medical-related business within West Virginia nor had it entered into contracts here with West Virginia residents or parties to

supply medical services or goods here. The Health Services Foundation had never solicited business or advertised its services to the general public in West Virginia. It had not derived any revenue from services rendered in West Virginia to patients here.

According to Ms. Woody's affidavit, the Health Services Foundation had not entered into any contracts with West Virginia residents in West Virginia to be performed by any party here. It does not own, use or possess real property in West Virginia. Likewise, this defendant had not, through its agents, employees or otherwise, solicited services in West Virginia or provided services to individuals here. It had not supplied products, materials, or things processed, serviced or manufactured by the Health Services Foundation for use or consumption in West Virginia, with the possible exception of prosthetic and orthotic devices which may have been manufactured and fitted in Virginia for patients from West Virginia who traveled to Virginia for fitting of the devices but then returned with the devices to West Virginia.

### E.

We point out that, in response to the various motions to dismiss and affidavits, plaintiff failed to then come forward with her own affidavits to controvert the defendants' jurisdictional facts. Moreover, the circuit court found that the plaintiff presented no evidence or even any assertion that these defendants' alleged contacts with West Virginia related in any way to the death of Mrs. Fry in Virginia and the claims arising therefrom.[13]

In its February 1, 1995 order, the circuit court determined, *inter alia*, that none of the nonresident defendants' alleged contacts with West Virginia

are directly related to the death of Nelda Fry, but are incidental contact, in the course of business.

**13.** For example, plaintiff alleged below that between July 1, 1993 and August 24, 1994, a period subsequent to Mrs. Fry's death, the West Virginia Workers' Compensation Fund paid to the University of Virginia Hospital $174,741.75, and $57,-414.99 to the University of Virginia Health Services Foundation. Though plaintiff argued that

West Virginia has adopted a two step approach in analyzing jurisdiction questions. The first step involves determining whether the defendant's actions satisfy the state long arm statute, the second step involves determining whether the defendants contacts with the State satisfy federal due process[.] *Abbott*, [*supra* ].

West Virginia has two applicable long arm statutes [*W. Va.Code,*] 31–1–15 and 56–3–33. The first ... pertaining only to the corporate defendants. It applies only when the corporation '(a) makes a contract to be performed, in whole or part, by any party thereto, in this State, (b) if such corporation commits a tort in whole or in part in this State, or (c) if such corporation ... manufacture[s] ... any product in a defective condition, and such product causes injury to any person ... within this State.' *Clearly, none of the provisions of [W. Va.Code,] 31–1–15 apply, as all actions pertaining to the 3 discrete causes of action, occurred in other States.*

The second long arm statute, [*W.Va.Code,*] 56–3–33 provides for jurisdiction over nonresidents, when one of seven enumerated actions occur. *Only the first enumerated action arguably applies, '(1) Transacting any business in this State.' This is the provision of the long arm statute asserted by Plaintiff in its brief, as conferring jurisdiction. Plaintiff asserts that the Defendants each transact business in West Virginia, and that because of this, the Court now has jurisdiction over these defendants pursuant to this second code provision.*

At first blush, this seems a credible argument. *A closer reading of the statute reveals that 'only a cause of action from (this business) may be asserted against (the defendant).' With respect to Defendant Boston Scientific, its business in this State is the promotion and sale of its products in West Virginia. There is no*

this is "clear and convincing evidence" that these entities "transacted business in West Virginia" for purposes of *W. Va.Code,* 56–3–33(a)(1) [1984], plaintiff fails to explain how the causes of action alleged in this case arose from or grew out of this transaction of business, as required by *W. Va.Code,* 56–3–33(a) [1984].

evidence or allegation relating Boston Scientific's activities in West Virginia, to the injuries now in question. Any business transacted by Boston Scientific, pertaining to this action, was transacted in either Massachusetts or Virginia.

With respect to the medical providers, it is not quite as clear. *Their business affairs in West Virginia relate to providing helicopters, solicitation and referral of patients, and providing services to persons covered by PEIA. There is nothing in the record, to indicate that any of these business affairs are directly related to the causes of action arising from the death of Nelda Fry.*

The facts in this case are distinguished from the facts of the cases cited by Plaintiff, in support of jurisdiction. In each of the cases where jurisdiction was upheld, actions directly relating to the cause of action, occurred in the forum state. *Here, all actions relating to the cause of action took place outside the State of West Virginia, and no resident of West Virginia is a party to the action. The only contacts between the State of West Virginia, and each of the defendants [are] incidental and unrelated in any way, to the underlying cause of action. For this reason, the Court is of the opinion that the Plaintiff fails to establish jurisdiction, pursuant to* [W. Va. Code,] 56-3-33.

The Court feels that since the Plaintiff fails to meet the first step in analyzing jurisdictional questions, it is not necessary to consider the second step of·determining whether the defendant's contacts with the State satisfy federal due process, under the analysis set forth in *Abbott.*

(emphasis added).

### F.

 In syllabus point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996), we stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" *See Cox v. Amick,* 195 W.Va. 608, 612, 466 S.E.2d 459, 463

(1995); *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995).

Based upon the record before us, we find no clear error in the circuit court's findings of fact. Furthermore, upon *de novo* review of whether those facts were sufficient to establish jurisdiction under our personal jurisdiction statutes, we find that plaintiff failed to demonstrate a *prima facie* case of jurisdiction.

### III.

For the reasons discussed herein, the Circuit Court of Monroe County's February 1, 1995 order, granting defendants' motions to dismiss for lack of personal jurisdiction, is affirmed.

Affirmed.

RECHT, Judge, sitting by temporary assignment.