498 S.E.2d 485

**Sharon M. GROVE, et vir., Appellant,**

v.

**Vettivelu MAHESWARAN, M.D., et al., Defendants and Third–Party Plaintiffs Below.**

**Rosemarie CANNARELLA, M.D., Third–Party Plaintiff Below, Appellant,**

v.

**Robert E. KEETON, M.D., et al., Third–Party Defendant Below, Appellees.**

No. 23870.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 15, 1997.

Decided Nov. 25, 1997.

**504**

D. Michael Burke, Burke & Schultz, Martinsburg, and Peter A. Cerick, Herndon, for Appellants Grove, et vir.

Charles F. Printz, Jr., Kimberly S. Croyle, Bowles, Rice, McDavid, Graff & Love, Martinsburg, for Rosemarie Cannarella, M.D.

D.C. Offutt, Jr., Offutt, Eifert, Fisher, Duffield & Nord, Huntington, and Dino S. Colombo, Jacobson, Maynard, Tuschman & Kalur, Morgantown, for Maheswaran, M.D.

Tracey B. Dawson, Kenneth J. Barton, Jr., Ancil G. Ramey, Steptoe & Johnson, Charleston, for Walter O'Brien, M.D.

Gray Silver, III, Spilman, Thomas & Battle Martinsburg, for Robert Keeton, M.D.

Beth A. Raffle, Susan S. Brewer, Steptoe & Johnson, Martinsburg, and Bernard G. Feord, Jr., Brian R. Sanderson, Pledger & Associates, McLean, VA, for Loudoun Hospital Center.

John P. Jessee, Flippin, Densmore, Morse, Rutherford & Jessee, Roanoke, VA, for Ali Assefi.

PER CURIAM:[1]

Appellant Dr. Rosemarie Cannarella, a defendant and third-party plaintiff in a medical malpractice action, appeals from the March 26, 1996, order of the Circuit Court of Jefferson County granting the motions to dismiss filed by Drs. Assefi and O'Brien and Loudoun Hospital Center in connection with the third-party complaints filed against them[2] by Dr. Cannarella. The circuit court granted the motions to dismiss after determining that the Appellee non-resident doctors and hospital did not have sufficient minimum contacts with this state to obtain personal jurisdiction over those parties. After a thorough review of the record in this matter, we affirm the lower court's decision.

The underlying medical malpractice action was filed by Sharon Grove in 1994 against Drs. Maheswaran and Cannarella, alleging that those physicians failed to promptly diagnose her cervical cancer condition when they treated her in 1983–84.[3] Dr. Cannarella filed a third-party complaint[4] against Drs. Keeton,[5] O'Brien, Assefi, and Loudoun Hospital Center, averring that those entities failed to provide proper follow-up care and diagnosis in connection with their treatment of Ms. Grove in Virginia in February 1992.

Drs. O'Brien, Assefi, and Loudoun Hospital filed motions to dismiss the third-party complaints filed against them for lack of personal jurisdiction in December 1995. The circuit court held an evidentiary hearing on the motions to dismiss on February 21, 1996, and issued its order dismissing the non-resident third-parties on March 27, 1996. Dr. Cannarella seeks a reversal of that order.

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) ("Per Curiam opinions ... are used to decide only the specific case before the Court; everything in a per curiam opinion beyond the syllabus point is merely *obiter dicta* .... Other courts, such as many of the United States Circuit Court of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.")

2. Service of process was not obtained over Drs. Assefi, O'Brien, and Loudoun Hospital via this State's long-arm statute, West Virginia Code § 56–3–33 (Supp.1997), but was effected by personal service of process upon those entities.

3. Not until Ms. Grove was treated at a Maryland hospital in June of 1992 was she finally diagnosed with cervical cancer.

4. The plaintiff has never asserted any claims against any of the third-party defendants.

5. Dr. Keeton is a West Virginia resident and does not raise any issue regarding improper assertion of jurisdiction over him.

■ The pivotal issue in this case is whether the circuit court correctly determined that personal jurisdiction could not properly be exercised against Drs. Assefi, O'Brien, and Loudoun Hospital for want of sufficient contacts with this State. Our analysis of this issue, as we explained in syllabus point one of *Lane v. Boston Scientific Corp.*, 198 W.Va. 447, 481 S.E.2d 753 (1996), is two-pronged:

> " 'A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in *W. Va.Code*, 31–1–15 [1984] and *W. Va.Code*, 56–3–33 [1984]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.' Syl. pt. 5, *Abbott v. Owens–Corning Fiberglas Corp.*, 191 W.Va. 198, 444 S.E.2d 285 (1994)."

*Lane*, 198 W.Va. at 448, 481 S.E.2d at 754, syl. pt. 1. In performing the second step of the analysis, we rely on our holding in *S.R. v. City of Fairmont*, 167 W.Va. 880, 280 S.E.2d 712 (1981): " 'The standard of jurisdictional due process is that a foreign corporation must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice.' Syllabus Point 1, *Hodge v. Sands Manufacturing Company*, 151 W.Va. 133, 150 S.E.2d 793 (1966)." Syllabus, 167 W.Va. at 880–81, 280 S.E.2d at 713.

While the circuit court appears to have examined only cursorily part one of the personal jurisdiction test,[6] its finding that sufficient minimum contacts necessary to comply with federal notions of due process are not present, and our affirmance of that finding,

negate the need to remand for a ruling under part one of the *Abbott* test. *See* 191 W.Va. at 200, 444 S.E.2d at 287, syl. pt. 5; *but see Abbott*, 191 W.Va. at 207–08, 444 S.E.2d at 294–95 (remanding for finding regarding defendants' commission of acts sufficient to invoke jurisdiction under West Virginia Code § 56–3–33 due to undeveloped record). The provision of our state's primary long-arm statute [7] upon which Ms. Cannarella appears to have been relying permits jurisdiction over non-residents who "caus[e] tortious injury in this state by an act or omission outside this state *if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state* [.]" W. Va.Code § 56–3–33(a)(4) (Supp.1997) (emphasis supplied). The circuit court's order, while lacking an explicit ruling regarding the existence of jurisdiction under West Virginia Code § 56–3–33, does address these same underscored factors within its minimum contacts analysis. We proceed to part two of the personal jurisdiction analysis—the minimum contacts analysis.

■ At the core of the minimum contacts requirement is the notion, rooted in concerns of fundamental fairness, that before a non-resident individual or corporation can be haled into the courts of another state, there must first be a showing of sufficient ties or connections to that state which demonstrate a purposeful interjection into the forum state. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This Court recently applied these principles in *Pries v. Watt*, 186 W.Va. 49, 410

6. The lower court appears to have relied solely on *City of Fairmont* in making its decision regarding the existence of personal jurisdiction.

7. A second long-arm statute that applies solely to corporations is set forth in West Virginia Code § 31–1–15 (Supp.1997). That statute requires a non-resident corporation to have made a contract to be performed, at least in part, in this state; or to have committed a tort in this state;

or to have manufactured, sold, or supplied a defective product which caused injury within this state before jurisdiction can be asserted. Under the facts of this case, the only non-resident corporate defendant in this case—Loudoun Hospital—does not fall within the requirements for exercising jurisdiction under West Virginia Code § 31–1–15.

S.E.2d 285 (1991), holding that "[t]here ... must be a sufficient connection or minimum contacts between the defendant and the forum state so that it will be fair and just to require a defense to be mounted in the forum state." *Id.* at 50, 410 S.E.2d at 286, syl. pt. 2, in part. We further recognized that "[t]o what extent a nonresident defendant has minimum contacts with the forum state depends upon the facts of the individual case." *Id.* at 50, 410 S.E.2d at 286, syl. pt. 3, in part.

■ In support of its position that the non-resident doctors and hospital do have sufficient contacts with this State to comply with federal due process, Appellant urges this Court to follow the decisions reached in *Cubbage v. Merchent,* 744 F.2d 665 (9th Cir. 1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985), and *Presbyterian University Hospital v. Wilson,* 337 Md. 541, 654 A.2d 1324 (1995). In *Cubbage,* a California court was found to have the requisite minimum contacts necessary to assert jurisdiction over two Arizona doctors and an Arizona community hospital based in part on the maintenance of telephone book listings in California; the physicians' obtaining Medi-Cal numbers from the State of California and reimbursement under such program; and the fact that more than a quarter of the Arizona hospital's patients were California residents. 744 F.2d at 667. In *Presbyterian,* personal jurisdiction by a Maryland court over a Pennsylvania hospital was upheld where the hospital had previously registered as a Maryland Medical Assistance Program ("MA") provider and had undertaken efforts to secure designation as a liver transplant referral center. 654 A.2d at 1331.

In an attempt to analogize the pertinent jurisdictional facts to those present in *Cubbage* and *Presbyterian,* Appellant suggests

that Dr. O'Brien's obtaining a Medicaid number from the State of West Virginia and the listing for Loudoun Hospital in a West Virginia telephone directory[8] is sufficient to invoke jurisdiction over the non-resident third-party defendants[9] in this case.[10] A close reading of both *Cubbage* and *Presbyterian* demonstrates that the courts' decisions regarding jurisdiction were affected by more than out-of-state phone listings and participation in another state's Medicaid program. Critical to the decision in *Presbyterian* were the "actively solicit[ous]" efforts of the Pennsylvania hospital in getting registered as a liver transplant hospital, securing a MA provider number, and its personnel's actions with regard to obtaining insurance coverage for the Maryland plaintiff following his contact with their facility. *Id.* at 1331. Importantly, the analysis employed by the court in *Presbyterian* did not turn solely on the presence of the Medicaid number and the hospital's actions in connection with its designation as a liver transplant facility, but on the correlation of those factors to the plaintiff's case. The court explained in *Presbyterian* how personal "jurisdiction involves ... an expanded factual inquiry into the precise nature of the defendant's contacts with the forum, *the relationship of these contacts with the cause of action,* and a weighing of whether 'the nature and extent of contacts ... between the forum and the defendant ... satisfy the threshold demands of fairness.' " 654 A.2d at 1330 (quoting *Camelback Ski Corp. v. Behning,* 312 Md. 330, 539 A.2d 1107, 1110(Md.), *cert. denied,* 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988)) (emphasis supplied). The court determined in *Presbyterian* that the plaintiff's choice of the Maryland facility was a direct result of the solicitations undertaken by that facility in connection with its designation as a liver

8. The record indicates that a single line listing for Loudoun Hospital appeared in the white and yellow pages of the 1993–94 telephone book for the Charles Town, Harpers Ferry, and Sheperdstown, West Virginia, areas.

9. The alleged contacts between Dr. Assefi and this state are derivative only, as Dr. Cannarella relies on Dr. Assefi's relationship with Loudoun Hospital as the sole basis for asserting jurisdiction over him. Yet, Dr. Assefi is not even employed by Loudoun Hospital; his employment

status at that facility is merely that of an independent contractor.

10. Appellant also argues that the one-time mailing of charitable solicitation letters in 1995, which resulted in contributions from eleven West Virginia residents, constitutes evidence of minimal contacts. The circuit court made a finding that of the eleven contributions received, nine of them originated from employees of Loudoun Hospital.

transplant facility and the additional actions of its personnel in undertaking efforts to secure the necessary insurance funds for the plaintiff's transfer operation, as well as their actions which convinced him to remain in Pennsylvania while they made arrangements for the transplant. 654 A.2d at 1331–32.

Like the court in *Presbyterian*, *Cubbage* recognized the necessity of demonstrating that the claim at issue arose out of or resulted from the non-residents' forum-related activities. 744 F.2d at 670. Focusing on both the Arizona facility's obtainment of a Medi–Cal number which entitled them access to California courts to settle grievances or complaints regarding unpaid Medi–Cal fees and the combination of white and yellow page listings in the adjacent California area, the *Cubbage* court concluded that "[t]hrough directory solicitation and participation in a state health care program appellees [nonresident doctors and hospital] were able to attract a substantial number of patients from California." *Id.* at 668–670. Emphasizing the border location of the Arizona facility, the *Cubbage* court concluded that the nonresident physicians and hospital "conduct[ed] continuing efforts to provide services" to California residents and that such purposeful interjection into California contributed to the "conclu[sion] that, on the facts of this case, assertion of *in personam* jurisdiction over appellees by a district court sitting in California does not offend due process." *Id.* at 669, 672. Of particular significance to the court in *Cubbage* was the ongoing nature of the Arizona defendants' contacts with California, including the receipt of substantial revenue from California residents. 744 F.2d at 672.

The facts of this case stand in contrast to those presented in *Presbyterian* and *Cub-*

*bage.* The record does not reveal that the plaintiff in the instant case is a Medicaid patient [11] or that her decision to seek treatment at Loudoun Hospital was in response to the hospital's West Virginia telephone listing.[12] Unlike the situation in *Cubbage* where more than twenty-five percent of the Arizona hospital's patients were shown to be California residents, no more than three and a half percent of Loudoun Hospital's patients are from West Virginia.[13] Further distinctions between the facts of *Cubbage* and the instant case include the concession by Dr. Cannarella that Loudoun Hospital did not engage in any active solicitation of West Virginia patients. As opposed to the implication in *Cubbage* that the Arizona hospital obtained a Medi–Cal number for the express purpose of soliciting California residents, Loudoun Hospital points out that it is required by federal statute [14] to provide services to anyone who presents themselves at the hospital emergency room and accordingly it obtains Medicaid provider numbers from various states for billing purposes. Dr. O'Brien only obtained his West Virginia Medicaid number after a West Virginia patient sought out his services.[15] Dr. O'Brien does not advertise in West Virginia and is not listed in any West Virginia phone directories. Dr. Assefi does not have a West Virginia Medicaid number; does not have a telephone listing in West Virginia; and does not advertise for patients in West Virginia. Upon examination, the operative facts in the instant case stand are clearly inapposite to either of the scenarios described in *Cubbage* and *Presbyterian.*

In her attempt to keep the non-resident third party defendants in this case, Dr. Cannarella is obviously straining to demonstrate the necessary minimal contacts required to

---

**11.** The record reflects that Ms. Grove listed two private insurers—Blue·Cross and Travelers—in connection with her admission.

**12.** The only evidence with regard to a West Virginia telephone listing for Loudoun Hospital that Dr. Cannarella introduced below concerned a listing that appeared in a 1993–94 directory, the year *after* Ms. Grove was treated at the facility. Loudoun Hospital maintains that because the listing is a long distance number, as opposed to a toll free one, this supports its position that such number was not placed for solicitation purposes.

**13.** The record reflects that for the years 1992 to 1995, the inpatient admissions of West Virginia residents at Loudoun Hospital ranged from 3.09% to 3.55%.

**14.** *See* 42 U.S.C. § 1395dd (1994).

**15.** The record reflects that Dr. O'Brien treated one patient prior to 1992 who was a West Virginia Medicaid recipient and further that he received *no* income from West Virginia Medicaid between 1992 and 1996.

permit West Virginia to assert personal jurisdiction over those entities. Given the factual distinctions discussed above with regard to *Cubbage* and *Presbyterian,* those cases cannot be relied upon as support for Appellant's position. The facts of the present case fit more squarely with those presented in *Nicholas v. Ashraf,* 655 F.Supp. 1418 (W.D.Pa. 1987). In that case, a Pennsylvania resident, alleging medical malpractice, sought to bring two West Virginia doctors and a West Virginia hospital into court in her home state. *Id.* at 1418. The plaintiff's Pennsylvania physician had referred her to the West Virginia University Hospital for exploratory surgery, allegedly in response to his receipt of a written solicitation from the University Hospital. *Id.* Plaintiff's only other ground upon which she sought to demonstrate sufficient contacts with the State of Pennsylvania was the University Hospital's acceptance of her as a patient with expectation of receiving reimbursement from the Pennsylvania Department of Public Welfare for her medical bills. *Id.* at 1418–19. The district court dismissed the non-resident doctors and hospital, finding that

> defendants have not maintained continuous and substantial forum contacts. Neither casual solicitation not directed to plaintiff nor the fact that Pennsylvania funds may be used to pay for medical bills rises to the level of contacts required by due process and *International Shoe, supra* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)]. Accepting out-of-state referrals and out-of-state welfare reimbursements do not indicate that defendants 'purposefully availed (themselves) of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

655 F.Supp. at 1419.

For the same reasons the court found persuasive in *Nicholas,* we conclude that the lower court correctly determined that insufficient contacts between the non-resident third party defendants exist in this case to support this state's exercise of personal jurisdiction over them. Accordingly, the decision of the Circuit Court of Jefferson County is hereby affirmed.

Affirmed.